IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TEXAS STAR NUT AND FOOD CO. D/B/A NATURE'S EATS, <br><br> *Plaintiff*, <br><br> vs. <br><br> BARRINGTON PACKAGING SYSTEMS GROUP, INC., <br><br> *Defendant*. | § § § § § § § § § § § § § | 5-21-CV-00444-JKP-RBF |

**ORDER**

Before the Court is the Motion to Transfer Venue, Motion to Compel Arbitration and Stay or Dismiss Proceedings filed by Defendant Barrington Packaging Systems Group, Inc. *See* Dkt. No. 4. This case was referred for resolution of all nondispositive pretrial matters. *See* Dkt. No. 8. The Court has authority to enter this Order pursuant to 28 U.S.C. § 636(b)(1)(A).[1]

For the reasons discussed below, Barrington's Motion to Compel, Dkt. No. 4, is **GRANTED**, and all claims asserted by Plaintiff Texas Star Nut and Food Co. d/b/a Nature's Eats shall be **COMPELLED** to arbitration in Chicago, Illinois, pursuant to the parties' arbitration agreement. This case shall be stayed while the parties pursue arbitration. In light of

---

[1] Although the Fifth Circuit hasn't specifically addressed, to the Court's knowledge, whether rulings on motions to compel arbitration are dispositive or nondispositive for purposes of § 636(b), other circuit courts that viewed such rulings as nondispositive, provided they don't result in dismissal of any claims and stay the litigation pending arbitration. *See, e.g.*, *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010); *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 Fed. App'x 131, 133-34 (3d Cir. 2014). District court decisions from within the Fifth Circuit are similar. *See*, *e.g.*, *Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL 2347425, at *1 (S.D. Tex. May 30, 2017); *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *1-3 (N.D. Tex. Dec. 21, 2015).

the foregoing, Barrington's alternative request to transfer the case to an Illinois court is **DISMISSED AS MOOT**.

## Factual and Procedural Background

This case arises out of a contract dispute between Plaintiff Nature's Eats—a company that markets and delivers premium-grade natural nuts, snacks, and baking ingredients—and Defendant Barrington—a supplier of packaging equipment. According to the live Complaint, the parties entered into negotiations in early 2020 regarding the purchase of a customized machine designed to bag Nature's Eats' products. Orig. Pet. ¶ 8 (Dkt. No. 1-2). During these negotiations, Barrington allegedly repeatedly assured Nature's Eats that Barrington would deliver a working bagger to Nature's Eats' Boerne, Texas facility within 75 days from the date Nature's Eats provided a signed contract and deposit. *See id.*

On April 7, 2020, the parties executed a document entitled "Proposal", which addressed the provision of the aforementioned bagger and, in furtherance thereof, Nature's Eats wired a $99,111 down payment approximately a week later on April 13, 2020. *See id.* ¶ 9; Dkt. No. 4-1 (Proposal). Pursuant to Barrington's alleged representations, Nature's Eats "anticipated" the delivery of an operational bagger 75 days thereafter—on or about June 27, 2020. Orig. Pet. ¶ 9. During the months that followed the parties' execution of the Proposal, Nature's Eats contends, it readied its facility for delivery of the bagger by purchasing specific product bags Barrington allegedly represented would be compatible with the new bagger. *See id.* ¶ 10. But Barrington, according to Nature's Eats, didn't timely deliver the machine. *See id.* ¶ 11. Throughout the summer and latter part of 2020, Barrington allegedly repeatedly assured and represented to Nature's Eats that various modifications to the bagger were at or nearing completion and that Barrington would deliver the bagger. To date, however, Nature's Eats alleges that Barrington

"still has not met its contractual obligations—or delivered on its repeated promises to [Nature's Eats]—to deliver an operational Bagger." *Id.*

Accordingly, on April 1, 2021, Nature's Eats sued Barrington in the 451st Judicial District Court, Kendall County, Texas, raising claims for (1) violations of the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Comm. Code § 17.01 *et al.*, (2) breach of contract; and (3) fraud and negligent representation. *Id.* Barrington subsequently removed the case on diversity grounds. *See* Dkt. No. 1. According to Barrington's Notice of Removal, Nature's Eats is a Texas corporation with its principal place of business in Texas. Barrington is Delaware Corporation. *See id.* ¶¶ 6-7. But the Notice of Removal doesn't specify Barrington's principal place of business. Shortly thereafter, Barrington moved to compel arbitration or alternatively, to transfer venue to the Northern District of Illinois for that Court to make the arbitration decision. *See* Dkt. No. 4.[2] Nature's Eats opposes the motion.

On September 8, 2021, the Court held a hearing at which the parties presented their respective arguments on whether arbitration should be compelled. At the hearing the Court orally ordered the parties to file an advisory to clarify Barrington's principal place of business. To date, Barrington hasn't complied with the Court's oral order.

**Analysis**

Barrington argues this is a straightforward request to enforce the parties' bargain in which they mutually agreed in writing to resolve in arbitration proceedings, to be held in Chicago, Illinois, any and all disputes related to the agreement. In support, Barrington invokes the following provisions in the parties' "Proposal":

---

[2] Although the motion itself appears to request transfer of venue to the Northern District of Illinois as the primary relief, Barrington clarified at the September 8, 2021 hearing that it only seeks transfer in the alternative.

15. LEGAL JURISTICTION [sic]. The rights and duties of all persons and the construction and effect of all provisions hereof shall be governed and construed according to the laws of Illinois. Any claims or disputes related to the terms and conditions herein shall be finally settled by binding arbitration in Chicago, Illinois. In no case shall the Seller's liability exceed the cost of the original equipment and/or service provided by the Seller.

16. STANDARD ARBITRATION CLAUSE. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof.

Dkt. No. 4-1.

Typically, two inquiries are involved in determining whether a dispute is subject to arbitration. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). First, the court must ascertain whether the parties entered into an agreement to arbitrate. *Id.* "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* Second, courts analyze "whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985), *i.e.*, whether "any federal statute or policy renders the claims nonarbitrable." *Sherer v. Green Tree Servs. LLC*, 548 F.3d 379, 381 (5th Cir. 2008). Here, there is no argument that any claim falls outside the scope of the arbitration provision; Nature's Eats' arguments involve only whether there is an enforceable agreement to arbitrate and if so, whether Texas policy precludes arbitration under these circumstances. On these issues the Court agrees with Barrington, and arbitration is the next stop for this dispute.

### A.     There is an Enforceable Agreement to Arbitrate.

Determining whether the parties entered into a valid arbitration agreement at all involves an issue of pure contract formation. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). When conducting this inquiry, a court merely asks "did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017). In doing so, courts "apply 'ordinary state-law principles that govern the formation of contracts.'" *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 n.2 (5th Cir. 2003) (quoting *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1995)). Although the relevant agreement between Barrington and Nature's Eats includes a choice-of-law provision that Barrington quotes and references in its briefing, Barrington analyzes and argues the enforceability issue only under Texas law, and it further indicated at the hearing that it need not rely on the choice-of-law provision, at least in the context of determining whether an enforceable arbitration agreement is present. Indeed, Barrington explained at the hearing that the arbitration provision is, in Barrington's view, enforceable under either Texas or Illinois law. Because neither party invokes the choice-of-law provision with respect to enforceability or points the Court to any difference in the laws of Texas and Illinois governing the enforceability of arbitration agreements, the Court will apply Texas law to this issue. *See* Resp. at n.2 (arguing that Barrington has waived application of Illinois law on this issue).

Barrington urges that the signed Proposal is a valid contract wherein the parties agreed to arbitrate the present dispute. The Court agrees. The Proposal contains the material and essential terms needed for contract formation: the specifications of the bagger; its price (including installation and estimated shipping expenses); the manner and amount of payment; and a general delivery time period. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) ("material

and essential terms are those that parties would reasonably regard as vitally important ingredient of their bargain") (quotations and brackets omitted). Although the Proposal doesn't contain a specific delivery date, under Texas law, the failure to specify a time of performance doesn't render a contract unenforceable. *Moore v. Dilworth*, 179 S.W.2d 940, 942 (Tex. 1944). "Generally, where no time of performance is stated in a contract, the law will imply a reasonable time." *Id.*

And Nature's Eats, for its part, doesn't dispute that a majority of the elements necessary for the creation of a binding contract under Texas law are satisfied here: (1) Barrington offered to supply Nature's Eats with a bagger; (2) Nature's Eats accepted the offer via the signed Proposal; (3) there was a meeting of the minds as expressed in the Proposal, and (4) the parties executed the contract with the intent it become mutual and binding. *See, e.g.*, *Song v. 4170 & 4231 & 4271 Altoona Drive Holdings Ltd. P'ship*, 616 Fed. App'x 645, 648 (5th Cir. 2015) (discussing the elements for contract formation under Texas law). At the hearing on Barrington's motion to compel, however, Nature's Eats argued for the first time that certain essential terms might be missing from the Proposal. But Nature's Eats didn't brief this issue; nor did it identify which essential terms are lacking here. Accordingly, Nature's Eats has forfeited any such argument. *See Wise v. Wilkie*, 955 F.3d 430, 438 n.28 (5th Cir. 2020) (failure to adequately brief issue constitutes forfeiture).

Barrington also notes that the Proposal's agreement to arbitrate invokes the American Arbitration Association Rules and is governed by the Federal Arbitration Act. And, citing Texas law, Barrington explains that "[a] trial court has no discretion but to compel arbitration and stay its own proceedings, if there is a valid arbitration agreement which encompasses the non-

movant's claims." Mot. at 4 (citing *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001)). The Court once again agrees.

In unsuccessfully opposing an order compelling arbitration, Nature Eats argues the arbitration clause is unenforceable because "(1) the agreement was procured by fraud; (2) the agreement fails for lack of consideration; (3) the agreement is substantively unconscionable." Resp. at 7. The first two of these arguments can be addressed in short order.

Nature's Eats' arguments regarding unenforceability due to fraud all center on the agreement as a whole; there is no argument that the arbitration provision itself was procured by fraud.[3] Such arguments are reserved for the arbitrator to decide and so present no impediment to compelling arbitration. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").[4] Moreover, the fact that Barrington allegedly hasn't fulfilled its end of the bargain by delivering an operational bagger doesn't, as Nature's Eats contends, render the agreement void for lack of consideration. Under Texas law, "[c]onsideration is a present exchange bargained for in return for a promise." *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). Here, Barrington promised to deliver a working bagger and, in exchange, Nature's Eats tendered a down payment and promised to pay the remainder upon delivery. Barrington's alleged failure to perform its promise likely gives rise to a breach-of-contract claim; it doesn't render the parties' agreement unenforceable for lack of consideration.

---

[3] *See* Resp. at 8 ("The record establishes Defendant never intended to perform under the Proposal when Defendant executed it").

[4] *See also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 648 (Tex. 2009) (party opposing arbitration must show that the fraud relates to the arbitration clause specifically, not to the contract as a whole); *Cf. Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211 (5th Cir. 2003) ("[W]here the "very existence of any agreement to arbitrate is at issue, it is for the courts to decide based on state-law contract formation principles.").

### B.     Texas Policy Doesn't Preclude Arbitration.

Nature's Eats' third argument—the one regarding substantive unconscionability—requires further explanation but ultimately fails as well. This argument purports to target the arbitration provision in that Nature's Eats characterizes the "arbitration provision [as] includ[ing] a choice of law provision for Illinois state law." Resp. at 10. According to the argument, "[i]f the parties were compelled to arbitrate their dispute under Illinois state law, then Nature's Eats' statutory rights and remedies under the Texas DTPA would be eliminated." *Id.*  In further support of this unconscionability argument, Nature's Eats points to numerous other provisions in the agreement purporting to limit any recovery in ways incompatible with the Texas DTPA's remedial scheme.

Although Nature's Eats styles the argument as one challenging the arbitration provision, the argument in fact either attacks the enforceability of the agreement as a whole or targets the agreement's choice-of-law provision. In either event, the argument falls short. If the argument attacks the agreement as a whole-—and it appears to by taking issue with the choice-of-law provision and various damages limitations in the agreement, not merely the arbitration provision—then the argument fails for the same reason that the lack-of-consideration and fraud arguments fail. *See, e.g.*, *Buckeye Check Cashing*, 546 U.S. at 449.

If the argument is an attack on the choice-of-law provision, it falls prey to binding precedent enforcing choice-of-law provisions like the one employed here. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (explaining that Texas courts generally respect parties' autonomy to contract for a specific choice-of-law). Although Texas courts won't enforce a choice-of-law provision where "countervailing public policy of the forum demands otherwise," *id.* (quotations omitted), Nature's Eats "cannot rely on the anti-waiver provisions of

the DTPA as a means of avoiding the consequences of the choice-of-law language it voluntarily chose." *Albaugh Chem. Corp. v. Occidental Electrochems. Corp.*, 4 F.3d 989 (5th Cir. 1993). "[A]ll choice of law and forum in contracts have the incidental effect of preventing one party from getting to use the laws of all the excluded jurisdictions." *CK DFW Partners Ltd. v. City Kitchens, Inc.*, No. CIV.A.3:06-CV-1598-D, 2007 WL 2381259, at *7 (N.D. Tex. Aug. 17, 2007) (California choice-of-law provision doesn't violate Texas public policy by depriving a party of its right to sue under the DTPA) (quotations and brackets omitted). Nature's Eats can't pick Illinois law to govern its disputes and then backpedal later when it doesn't like the repercussions of that choice. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (burden of proving unenforceability of a contract for fraud, unconscionability, or voidness under public policy falls on the party opposing the contract).

Even assuming for argument's sake that Nature's Eats attacks the enforceability of the arbitration provision only, and not the entire agreement or its agreement to be bound by Illinois law, the case would still need to go to arbitration because Nature's Eats' various tort claims (including its DTPA claim) are intertwined with and related to its breach-of-contract claim. *See In Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 270-71 (Tex. 1992) (DTPA claims arising out of misrepresentations subject to arbitration because the basis for the claims was "factually intertwined" with breach-of-contract claim).[5] In *AutoNation USA Corp. v. Leroy*, the court noted, for example, that claims are arbitrable "if the facts alleged 'touch matters,' have a 'significant

---

[5] *See also Cotton Commercial USA, Inc. v. Clear Creek Indep. School Dist.*, 387 S.W.3d 99, 108 (Tex. App. — Houston [14th Dist. 2012], no pet.) (compelling arbitration because plaintiff's claims for fraud and money had and received "touch matters," "have a significant relationship" to are "inextricably enmeshed" with, and are "factually intertwined" with the parties' contract) ; *Gerwell v. Moran*, 10 S.W.3d 28 (Tex. App. —San Antonio 1999, no writ) ("As long as the asserted claims *touch upon matters covered by the agreement*, the claims are subject to arbitration regardless of the legal label attached to them.") (quotations omitted, emphasis in original).

relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement." 105 S.W.3d 190 (Tex. App. – Houston [14th Dist.] 2003, no pet.). The contract claim falls within the scope of the arbitration provision and doesn't do any damage to the DTPA or Texas law. Accordingly, that claim is subject to arbitration in Illinois and under Illinois law. The remaining tort claims, including the DTPA claim about which Nature's Eats expresses considerable concern, must follow the contract claim as they all—at a minimum—touch matters involving the parties' contract. *Id.*

## Conclusion

For the reasons discussed above, Barrington's Motion to Compel, Dkt. No. 4, is **GRANTED**, and all claims asserted by Nature's Eats in this litigation shall be **COMPELLED** to arbitration in Chicago, Illinois, pursuant to the parties' arbitration agreement. The Court will **STAY** this case pending a decision by the arbitrator. Barrington's alternative request to transfer the case to Illinois is **DISMISSED AS MOOT**.

In light of the foregoing, the Clerk is **DIRECTED to** administratively close this case, pending completion of arbitration. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) (explaining that district courts frequently make use of administrative closure to remove inactive cases from their pending dockets). The case may be re-opened in the future, without payment of filing fees, upon written motion from either party after conclusion of the arbitration proceedings, subject to the limited judicial review set forth in the Federal Arbitration Act.

**IT IS FINALLY ORDERED THAT** notwithstanding the aforementioned stay and administrative closure Defendant Barrington shall file—within **seven** days from the date of this Order—an advisory indicating its principal place of business so that the Court can be assured

diversity jurisdiction exists here. **Failure to timely do so may result in the Court vacating this order and recommending that this case be remanded for lack of jurisdiction**. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("Federal courts are courts of limited jurisdiction. We must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."); *see also* Fed. R. Civ. P. 41(b) (permitting a court to order the dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order").

**IT IS SO ORDERED**.

SIGNED this 21st day of October, 2021.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE